BARRY J. PORTMAN
Federal Public Defender
NICHOLAS P. HUMY
CYNTHIA LIE
Assistant Federal Public Defenders
160 West Santa Clara Street, Suite 575
San Jose, CA 95113
Telephone: (408) 291-7753

Counsel for Defendant ABD HIR

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>RAHMAT ABD HIR,<br>Defendant. | No. CR-07-00501 JF<br><br>OPPOSITION TO GOVERNMENT'S APPEAL OF MAGISTRATE'S PRETRIAL RELEASE ORDER |

**TABLE OF CONTENTS**


INTRODUCTION . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . 1

I. The Defense has Provided Ample Evidence to Rebut the Presumption that Mr. Abd Hir is a Danger to the Community or a Flight Risk . . . . . . . . . . 1

II. Once Mr. Abd Hir Rebuts the Presumption, the Government Bears the Burden of Proving that this is one of the "Rare Cases" in Which Bail Should be Denied . . . . . . . . . . 2

III. Mr. Abd Hir is Not a Danger to the Community . . . . . . . . . . 3

A. The Government is Required to Show that Mr. Abd Hir Poses a Danger to Specifically Identified Individuals or to the Northern District of California . . . . . . . . . . 3

B. The Government has Failed to Produce any Meaningful Evidence that Mr. Abd Hir Poses a Danger to the Northern District of California . . . . . . . . . . 4

1. Possession of Arabic Books Advocating Jihad . . . . . . . . . . 5

2. Notes Handwritten in Arabic . . . . . . . . . . 6

3. Mr. Abd Hir's "Affinity for Guns" . . . . . . . . . . 6

4. Mr. Abd Hir's Possession of Military Manuals . . . . . . . . . . 6

5. The Photo of Mr. Abd Hir and his Son . . . . . . . . . . 7

6. Mr. Abd Hir's E-Mails and Statement . . . . . . . . . . 7

IV. Mr. Abd Hir is Not a Flight Risk . . . . . . . . . . 9

A. Mr. Abd Hir Made No Attempt to Flee, Despite Knowledge that he was Under Investigation . . . . . . . . . . 9

B. Mr. Abd Hir Would Likely Face a Worse Situation in Malaysia . . . . . . . . . . 9

C. Mr. Abd Hir's Lack of Previous Exposure to Prison is Not Evidence of Flight Risk . . . . . . . . . . 10

D. Mr. Abd Hir has Substantial Ties to the United States . . . . . . . . . . 10

E. The Conditions Set by Judge Lloyd are More than Sufficient to Address any Flight Risk . . . . . . . . . . 11

CONCLUSION . . . . . . . . . . 12

# TABLE OF AUTHORITIES

## Federal Cases

Griswold v. Connecticut,
381 U.S. 479 (1965) . . . . . 5

United States v. Dominguez,
783 F.2d 702 (7th Cir. 1986) . . . . . 2

United States v. King,
849 F.2d 485 (11th Cir. 1988) . . . . . 4

United States v. Koenig,
912 F.2d 1190 (9th Cir. 1990) . . . . . 4

United States v. Kouyoumdjian,
601 F. Supp. 1506 (C.D. Calif. 1985) . . . . . 10

United States v. Motamedi,
767 F.2d 1403 (9th Cir. 1985) . . . . . 3, 5, 7, 9

United States v. O'Rourke,
2006 U.S. Dist. 1044 (D. Ariz.) . . . . . 4

United States v. Perez-Franco,
839 F.2d 867 (1st Cir. 1988) . . . . . 2

United States v. Robinson,
– F. Supp. 2d –, 2007 WL 1520967 (N.D. Calif.) . . . . . 8, 10

United States v. Salerno,
481 U.S. 739 (1987) . . . . . 4

United States v. Winsor,
785 F.2d 755 (9th Cir. 1986) . . . . . 7

## Federal Statutes

Title 18 U.S.C. § 3142 . . . . . 3

## Additional Authorities

"Malaysia: Country Reports on Human Rights Practices – 2006,"
U.S. Dept. of State (March 6, 2007) . . . . . 10

Report of the Senate Committee on the Judiciary,

S. Rep. No. 98-225, 98th Cong., 2d Sess. (1984)
U.S. Code Cong. & Admin. News 3182 . . . . . . . . . . . . . . . . . . . . 4

"'We Need Complete Info on Zulkifli Abdul Hir' – Syed Hamid,"
Malaysian National News Agency (Sept. 5, 2007) . . . . . . . . . . . . . . . . . . . . 9

## INTRODUCTION

Rahmat Abd Hir is accused of providing material support to terrorists, in violation of Title 18 U.S.C. § 2339A; contributing goods and services to a specially designated global terrorist, in violation of Title 50 U.S.C. § 1705(b); and making a false statement, in violation of Title 18 U.S.C. § 1001. The charges stem from Mr. Abd Hir's efforts to help his brother, who is immersed in a decades-long secessionist movement in the Philippines. Based upon the indictment, the affidavit in support of the search warrant, and the discovery that has been made available to the defense, it appears that this case will turn on the nature of Mr. Abd Hir's brother's acts in the Philippines, Mr. Abd Hir's understanding of the nature of those acts, and Mr. Abd Hir's understanding of how his brother would put to use any support he may have provided.

Rahmat Abd Hir is an American citizen with a loving family, a stable career, and no criminal record. After what appears to have been at least two years of intensive surveillance, the government is unable to produce any evidence that Mr. Abd Hir has ever committed a violent act. The government argues that Mr. Abd Hir should not be released because he might attempt to flee to Malaysia, but there is no evidence to support this speculation. After two evidentiary hearings, the Honorable Howard R. Lloyd set conditions for Mr. Abd Hir's release. The government has not come forward with any new evidence. Because the government is unable to meet its burden of proving that Mr. Abd Hir's is one of the rare cases in which bail should be denied, the defense respectfully requests that the Court adopt Judge Lloyd's findings and order or fashion its own order of release.

## ARGUMENT

### I. The Defense has Provided Ample Evidence to Rebut the Presumption that Mr. Abd Hir is a Danger to the Community or a Flight Risk

The government argues that Mr. Abd Hir "has failed to present any facts" to rebut the statutory presumption that he poses a danger to the community or a flight risk. The government is incorrect. At the two previous detention hearings, Mr. Abd Hir presented evidence that he has

no criminal history; that he has never committed or threatened to commit a violent act; that he, his wife, and his four children are all American citizens; that he has a consistent employment history; that he has strong ties to the community; and that he has several friends in the community who have come forward as sureties.

The threshold for rebutting the presumption under § 3142 is low. "The burden of production is not a heavy one to meet," and "[a]ny evidence favorable to a defendant that comes within a category listed in § 3142 can affect the operation of one or both of the presumptions, including evidence of their marital, family and employment status, ties to and roles in the community, [and] clean criminal record." United States v. Dominguez, 783 F.2d 702, 707 (7th Cir. 1986).

In Dominguez, for example, the Seventh Circuit concluded that the defendants had met their burden of producing evidence to rebut the presumptions under § 3142 by demonstrating that they were lawful permanent residents who had been in the United States for approximately five years, had no criminal records, and had been consistently employed. (One of them was also married and had family in the United States; the other apparently did not.) See id.

The evidence Mr. Abd Hir has proffered is at least as compelling as that put forward in Dominguez. In addition to his strong family ties, Mr. Abd Hir is a citizen, not just a lawful resident; and while the defendants in Dominguez had spent only a few years in the United States, Mr. Abd Hir has lived here for his entire adult life. He has presented far more evidence than is necessary to rebut the statutory presumption.

## II. Once Mr. Abd Hir Rebuts the Presumption, the Government Bears the Burden of Proving that this is one of the "Rare Cases" in Which Bail Should be Denied

Once a defendant produces evidence to rebut the presumption of danger and flight risk, "[t]he burden of persuading the court that 'no condition or combination of conditions will reasonably assure' defendant's presence at trial rests with the government." United States v. Perez-Franco, 839 F.2d 867, 870 (1st Cir. 1988). "Only in rare circumstances should release be

denied. Doubts regarding the propriety of release should be resolved in favor of the defendant." United States v. Motamedi, 767 F.2d 1403, 1405 (9th Cir. 1985) (citations omitted).

The reason for placing such a heavy burden on the government is simple: "The defendant has a basic and significant liberty interest in not being confined pending trial." Id. at 1414 (Boocheever, J., concurring and dissenting in part).

> This interest encompasses more than the fundamental loss of freedom for the pretrial period. Pretrial confinement may imperil the suspect's job, interrupt his source of income, and impair his family relationships. Pretrial detention may hamper preparation of a defense by limiting the defendant's access to his attorney and to potential witnesses for the defense. The magnitude of these concerns is increased by the fact that the injuries consequent upon pretrial confinement may not be reparable upon a subsequent acquittal.

Id. (citations omitted).

## III. Mr. Abd Hir is Not a Danger to the Community

### A. The Government is Required to Show that Mr. Abd Hir Poses a Danger to Specifically Identified Individuals or to the Northern District of California

The government must show by clear and convincing evidence that there are no conditions of release that "will reasonably assure . . . the safety of any other person and the community." 18 U.S.C. § 3142(g). The government acknowledges that "the community" to which § 3142 refers is the community into which Mr. Abd Hir would be released, namely, the Northern District of California. But the government argues that this Court could also detain Mr. Abd Hir as a danger to the residents of a foreign country such as the Philippines. In support of its argument, the government contends that the language "any other person" in § 3142 encompasses any community anywhere in the world since "[i]t is difficult to believe that Congress would want defendants to be released on bail because they may not pose a harm to their local community, even if they pose a potential lethal harm to a community across the country or overseas." See Gov't Appeal at 14:13-17. This argument is belied by the legislative history of § 3142, in which Congress made clear that the phrase "any other person" must be read narrowly:

> "The concept of defendant dangerousness is described throughout this chapter by the term 'safety of any other person or the community.' *The reference to safety of*

> *any other person is intended to cover the situation in which the safety of a particular identifiable individual, perhaps a victim or witness, is of concern*, while the language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community."

United States v. King, 849 F.2d 485, 487 n.2 (11th Cir. 1988) (quoting Report of the Senate Committee on the Judiciary, S. Rep. No. 98-225, 98th Cong., 2d Sess. (1984) U.S. Code Cong. & Admin. News 3182, 3195-96) (emphasis added).[1]

The government has never suggested, much less presented evidence, that Mr. Abd Hir's release would pose a threat to "the safety of a particular identifiable individual," such as a victim or witness. In the absence of any such evidence, Judge Lloyd correctly concluded that the only community at issue is the community into which Mr. Abd Hir would be released.[2]

**B. The Government has Failed to Produce any Meaningful Evidence that Mr. Abd Hir Poses a Danger to the Northern District of California**

Ordinarily, when the government seeks detention based upon danger to the community, it will be able to point to objective evidence to support its claim. As the Ninth Circuit has explained:

> [A] finding of danger to the community is likely to involve more specific and quantifiable evidence than is a finding of risk of flight. For instance, prior convictions, police reports, and other investigatory documents are, as a matter of course, used to show past histories of violence. From these objective sources, trial

---

[1]The government also cites two cases, neither of which supports its reading of the statute. United States v. Salerno, 481 U.S. 739 (1987), concerned a *facial* challenge which, by definition, does not entail the consideration of any case-specific facts. See id. at 741. In United States v. O'Rourke, 2006 U.S. Dist. 1044 (D. Ariz.), the defendant was detained because a pretrial release order would not include any requirement that he register as a sex offender "and thereby provide notice to the community of his involvement in abusive pornography." Id. at *9. Nothing in O'Rourke suggests that the court was concerned with any community but the particular community into which the defendant would have been released.

[2]Although this Court considers the question whether to release Mr. Abd Hir *de novo*, the Court is not required to disregard Judge Lloyd's findings and decision. As the Ninth Circuit has explained: "Clearly, the district court is not required to start over in every case, and proceed as if the magistrate's decision and findings did not exist." United States v. Koenig, 912 F.2d 1190, 1193 (9th Cir. 1990). The Court is not bound by Judge Lloyd's findings, but it is free to adopt them.

judges may infer a present danger to the community.

United States v. Motamedi, 767 F.2d 1403, 1407 (9th Cir. 1985).

In the present case, no such objective evidence exists. Mr. Abd Hir has no prior criminal record. There are no reports showing a past history of violence. Despite years of intensive surveillance, the government is unable to point to a single instance in which Mr. Abd Hir either committed or advocated a violent act. Instead, the government points to a variety of legal activities and as yet unproved accusations in support of its argument that Mr. Abd Hir might pose a danger to the Northern District of California.

**1. Possession of Arabic Books Advocating Jihad**

First, the government argues that Mr. Abd Hir poses a danger because the FBI found books in a shed behind Mr. Abd Hir's house, most of them written in Arabic, that appear to advocate Jihad.[3] The government has acknowledged that it does not know whether the books belong to Mr. Abd Hir, and that there is nothing illegal about possessing them. See Transcript of 8/14/07 Proceedings Before the Honorable Howard R. Lloyd (hereinafter "8/14/07 Transcript") at 8:21-25; 14:4-8. Likewise, the government has no reason to believe that Mr. Abd Hir has read the books, or even knows how to read Arabic (he does not); and even if Mr. Abd Hir had read the books, there would be no way to know if he agreed with them. Nonetheless, the government insists that "the literature he is reading gives an indication of his mindset and his belief and his moral compass." Id. at 9:2-5. This argument is not only illogical, it strikes at the heart of the principles our Constitution was written to protect. The government cannot "consistently with the spirit of the First Amendment, contract the spectrum of available knowledge. The right of freedom of speech and press includes not only the right to utter or print, but the right to distribute, the right to receive, the right to read and freedom of inquiry, freedom of thought." Griswold v. Connecticut, 381 U.S. 479, 482 (1965) (citations omitted).

---

[3]The government does not mention other books found at Mr. Abd Hir's home, including the Bible and the Old Testament.

**2. Notes Handwritten in Arabic**

At the second detention hearing, the government argued that Mr. Abd Hir poses a danger because the FBI found a notebook with notes handwritten in Arabic, including a "life-assessment-type thing," which contains the words "Islaam" and "Jihaad"; a series of literary quotations that, in the government's opinion, "suggest violence." See 8/14/07 Transcript at 13:10-15, 21-24. The government was forced to concede that it had no idea who had written these notes. See id. at 14:408. Since Mr. Abd Hir can neither read nor write Arabic, it is unlikely that the notebook belongs to him.

**3. Mr. Abd Hir's "Affinity for Guns"**

The government argues that Mr. Abd Hir poses a danger because of his "strong affinity for guns." See Gov't Appeal at 15:14-16. It is true that Mr. Abd owns several guns. But as the government has conceded, Mr. Abd Hir's ownership of the guns is completely legal and there is no evidence that he has ever used one in an illegal manner. Indeed, most of the guns were found in a storage locker that, according to the government, had been untouched for at least two years. Although the government's appeal states that the search of Mr. Abd Hir's bedroom yielded "[m]iscellaneous firearms including a sniper scope and dis-assembled gun butts and gun stocks," see Gov't Appeal at 5:8-9, this claim is contradicted by the search warrant return, which indicates that no firearms were found or seized, see Search Warrant Return for Mr. Abd Hir's home, attached hereto as Exhibit A.

At any rate, to the extent that Mr. Abd Hir's ownership of guns is a concern to the Court, the Court could easily restrict Mr. Abd Hir's access to firearms as a condition of release.

**4. Mr. Abd Hir's Possession of Military Manuals**

In a related argument, the government contends that Mr. Abd Hir is a danger because he collects military manuals and other memorabilia. These items are readily available at gun shows there is nothing illegal about possessing them.

**5.     The Photo of Mr. Abd Hir and his Son**

The government refers to a "graphic photo" of Mr. Abd Hir posing with a group of people including a small child among a collection of rifles. This photograph does not depict any illegal conduct, nor does it intimate any violent intent. Equally important, the photo is approximately nine years old. In the years since the photo was taken, Mr. Abd Hir has not committed any violent acts. The photo's value as a predictor of violence is therefore nonexistent.

**6.     Mr. Abd Hir's E-Mails and Statement**

Finally, the government places great emphasis on the nature of the charges and the evidence it believes supports those charges. While the evidence against a defendant is one factor to be considered, the Ninth Circuit has made clear that "the weight of the evidence is the least important of the various factors." Motamedi, 767 F.2d at 1408. As the Court explained in Motamedi:

> Although the statute permits the court to consider the nature of the offense and the evidence of guilt, the statute neither requires nor permits a pretrial determination that the person is guilty. These factors may be considered only in terms of the likelihood that the person will fail to appear or will pose a danger to any person or to the community. Otherwise, if the court impermissibly makes a preliminary determination of guilt, the refusal to grant release could become in substance a matter of punishment.

Id. (citations omitted); see also United States v. Winsor, 785 F.2d 755, 757 (9th Cir. 1986) (quoting Motamedi).

Given the apparent duration of the government's investigation, what is most noteworthy about the evidence against Mr. Abd Hir is what is missing. While the defense has no way of knowing exactly how many e-mails the government has intercepted in the course of its investigation, the government has yet to produce one in which Mr. Abd Hir advocates violence, either in the United States or anywhere else; in which he devises or describes a plan to commit a violent act, either in the United States or anywhere else; or in which there is an indication that he has ever committed a violent act, either in the United States or anywhere else.

At some point during an eight-hour interrogation, Mr. Abd Hir "admitted that he knew

that the two-way radios he was supplying for his brother would be used to make bombs." See Gov't Appeal at 2:20-22. It is hard to know how much weight should be given to statements made during a lengthy interrogation. It is also important to note that the defense expects to be able to demonstrate at trial that Mr. Abd Hir's brother has not been acting as a terrorist and has not targeted civilians. Rather, he is involved in a long-standing secessionist movement, acting as a member of an organization that has scrupulously abided by cease-fires and is actively seeking peace negotiations with the Philippine government. And, for purposes of the detention issue, what is most significant is that there is no indication that Mr. Abd Hir made any statement that he personally intended to harm anyone, in the Northern District or elsewhere.

The limited weight that should be accorded to this factor is demonstrated in United States v. Robinson, – F. Supp. 2d –, 2007 WL 1520967 (N.D. Calif.). Unlike Mr. Abd Hir, who has never committed a violent act, the defendant in that case had "terrorized numerous individuals in the bank and in fact physically restrained someone who tried to escape," id. at *3, Judge Armstrong nonetheless refused to order detention, explaining:

> The Government has presented no evidence that, other than the behavior associated with the crime, the Defendant has ever exhibited any dangerous characteristics or exhibits flight tendencies. . . .
>
> The Court is faced with a Defendant who, while admittedly involved in an extremely serious crime of (potential) violence, has, other than the instant crime, demonstrated absolutely no propensity for criminal behavior. If this is not a case in which a defendant has successfully rebutted the presumption that he is a danger to the community and a flight risk, it is hard to imagine what would be.

Id. at *4. Here, there is even less reason to expect any violent behavior than in Robinson.

Finally, it is significant that although the government has been aware of Mr. Abd Hir's communications with his brother and his allegedly illegal actions for at least two years, it did not take any action to detain him until the indictment was returned. If Mr. Abd Hir did not pose a danger to the community when he was free to come and go as he pleased, there is no reason to expect that he would suddenly pose a danger when his actions are restricted by the conditions of a release order.

## IV. Mr. Abd Hir is Not a Flight Risk

### A. Mr. Abd Hir Made No Attempt to Flee, Despite Knowledge that he was Under Investigation

Although Mr. Abd Hir did not know the extent to which he was under surveillance prior to his arrest, he has long known that the federal government is interested in his activities and those of his brother. Mr. Abd Hir was interviewed several times by federal agents in the course of the investigation. Nonetheless, he never attempted to flee. In similar circumstances, the Ninth Circuit has noted that the failure to flee pre-indictment supports a conclusion that a defendant is not a flight risk. As the court explained in Motamedi:

> [The defendant] states that he has known of the investigation into his exporting activities since January 1984. Moreover, he was informed upon his arrest that the Government would seek an indictment on the current charges, but he was nevertheless released on conditions for several weeks before issuance of the indictment. Accordingly, he argues, there is no greater risk that he will flee now than there has been since his arrest and release on conditions. We agree.

Motamedi, 767 F.2d at 1408.

### B. Mr. Abd Hir Would Likely Face a Worse Situation in Malaysia

The government makes much of the fact that Mr. Abd Hir has dual citizenship, as do two of his four children. According to the government, "[t]his clearly suggests an intent and a motivation to return to Malaysia at some point." See Gov't Appeal at 13:5-6. On the contrary, Mr. Abd Hir has every incentive to avoid returning to Malaysia. The charges against Mr. Abd Hir have been widely broadcast in Malaysia (Mr. Abd Hir's mother learned about the charges from the TV news). As a result of the charges against Mr. Abd Hir, his family in Malaysia has become the subject of intense scrutiny from local law enforcement. In addition, the Malaysian government has made clear that it is cooperating with the United States' pursuit of Mr. Abd Hir's brother Zulkifli. See "'We Need Complete Info on Zulkifli Abdul Hir' – Syed Hamid," Malaysian National News Agency (Sept. 5, 2007), available at http://www.bernama.com/bernama/v3/news.php?id=280051, attached hereto as Exhibit B (in which Malaysia's Foreign Minister pledges to "cooperate with all parties to catch and bring

Zulkifli to justice"). Far from being a safe haven for Mr. Abd Hir, Malaysia would almost certainly detain Mr. Abd Hir, indefinitely and without any due process, pursuant to the Malaysian Internal Security Act (ISA).[4] According to the State Department, the ISA is one of several Malaysian laws to "permit the government to detain suspects without normal judicial review or filing formal charges." See "Malaysia: Country Reports on Human Rights Practices – 2006," U.S. Dept. of State (March 6, 2007), available at http://www.state.gov/g/drl/rls/hrrpt/2006/78780.htm, attached hereto as Exhibit C. Under the ISA, detention without due process may be authorized by the internal security minister for "up to two years, with an unlimited number of two year periods to follow." Id.

**C. Mr. Abd Hir's Lack of Previous Exposure to Prison is Not Evidence of Flight Risk**

The government argues that because "defendant has never served time in jail, the prospect of many years in jail constitutes a strong incentive to flee from prosecution." See Gov't Appeal at 13:24-26. In Robinson, Judge Armstrong was appropriately dismissive of an identical argument:

> The Government argues, unconvincingly, that because Defendant has no criminal record and has never served time in jail, the prospect of many years in jail constitutes a strong incentive to flee from prosecution. This illogical proposition is meritless; a defendant with an extensive criminal history has at least as much, if not more incentive to flee to avoid imprisonment as one with no history, as is the case here, and the Government's sophistical argument is essentially a concession that this factor weighs in favor of release.

Robinson, 2007 WL 1520967 at *3.

**D. Mr. Abd Hir has Substantial Ties to the United States**

Mr. Abd Hir is an American citizen. His wife and four children live here. His wife's extended family lives in Southern California. He is a respected and trusted member of the

---

[4] Alternatively, the Malaysian government could choose to extradite Mr. Abd Hir, pursuant to its bilateral extradition treaty with the United States. Cf. United States v. Kouyoumdjian, 601 F. Supp. 1506, 1512 (C.D. Calif. 1985) (citing lack of extradition treaty with Lebanon as a reason for detention).

community, as evidenced by the willingness of various friends to show their support by attending his court proceedings and volunteering to post property on his behalf.

Although the government claims that "there is nothing to keep the defendant here," the truth is that he has spent his entire adult life in the United States. He earned his college degree from Arizona State University and went on to earn a graduate degree here. Unlike some of his siblings, who came here only for school and then returned to Malaysia, Mr. Abd Hir has built a full life for himself, his wife, and his children in the United States.

**E. The Conditions Set by Judge Lloyd are More than Sufficient to Address any Flight Risk**

Judge Lloyd set the bond at $600,000, to be secured by the posting of Mr. Abd Hir's home, as well as houses belonging to three couples who are longtime friends of Mr. Abd Hir and his wife. Each of these sureties was questioned at length by Judge Lloyd, to ensure that they were aware of the seriousness of their decision. In addition, Mr. Abd Hir is to be monitored via global positioning satellite.

The government objects that Mr. Abd Hir should not be permitted to post his home because it is considering instituting forfeiture proceedings at some point. See Gov't Appeal at 9:13-16. To date, no forfeiture proceedings have been initiated. If the status of Mr. Abd Hir's home changes in the future, the government could ask the Court to modify the conditions of release. Until then, the specter of forfeiture is not a sufficient reason to deny bail.

The government objects to the remaining sureties on two grounds. First, the government argues that "although the total bond set is $600,000, no one individual surety is responsible for more than $313,000." See Gov't Appeal at 9:20-21. The defense would respectfully submit that for most people, including the sureties in this case, $313,000 is a significant amount of money to risk. To the extent that the government means to suggest that it is better to have one rich surety post $600,000 than to have several sureties of more modest wealth post smaller amounts, the defense would suggest that the opposite is true. It is a testament to Mr. Abd Hir's standing in the

community that so many people who are not even related to him are willing to come forward.

Second, the government objects to the fact that not all of the sureties are posting their "primary residences." The government asserts without explanation that this "indicates a lack of faith on their behalf that defendant will indeed abide by the conditions of release." See id. at 9:25-28. Although a primary residence may hold additional symbolic value, it is no different as a practical matter. Either way, the amount of money at stake is the same, and it is substantial.

## CONCLUSION

After approximately two years of investigation and surveillance, the government is unable to produce a single piece of evidence that Rahmat Abd Hir has ever committed, or even contemplated, a violent act. The government's claim that Mr. Abd Hir is a flight risk is based on its erroneous assumption that Mr. Abd Hir would be welcome in Malaysia when it is far more likely that he would be persecuted there. The government has failed to meet its burden of proving either that Mr. Abd Hir is a danger or that he is a flight risk. To the extent that any such risk exists, it can be addressed by the imposition of appropriate conditions of release. For these reasons, the defense respectfully requests that the Court either adopt Judge Lloyd's order of release or set its own conditions of pretrial release.

Dated: September 5, 2007

Respectfully submitted,

BARRY J. PORTMAN
Federal Public Defender

___________/s/________________
NICHOLAS P. HUMY
Assistant Federal Public Defender