**e-filed 9/18/07

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR-07-00501 JF |
| Plaintiff, | ORDER RE PRETRIAL DETENTION; REQUEST FOR SUPPLEMENTAL BRIEFING |
| v. | |
| RAHMAT ABD HIR, | |
| Defendant. | |

Pursuant to 18 U.S.C. §3145(a)(1), the United States ("the Government") has appealed the order of Magistrate Judge Howard R. Lloyd granting pretrial release to Defendant Rahmat Abd Dir ("Defendant"). The Government contends that Defendant is both a flight risk and a danger to the community, and that no conditions or combination of conditions reasonably will assure Defendant's appearance in Court or the safety of the community. For the reasons set forth below, the Court will affirm Judge Lloyd's findings with respect to flight risk except as to the amount of bond and will modify the bond accordingly should that become necessary. With respect to the issue of dangerousness, the Court agrees with the Government that a finding of dangerousness under 18 U.S.C. §3142 does not necessarily require a showing that the persons or community to whom a defendant poses a danger must be located within the Court's jurisdiction.

However, because the issue of Defendant's dangerousness to persons outside the Northern District of California was not fully developed before Judge Lloyd, the Court also concludes that it requires supplemental briefing from the parties and from the Office of Pretrial Services in order to determine whether there are any conditions or combinations of conditions of release that reasonably will assure the safety of other persons and the community.

**PROCEDURAL HISTORY**

Defendant is charged in a sixteen-count indictment with providing material support to his brother and co-defendant, Zulkifli Abd Hir, who has been identified by the Government as a Specially Designated Global Terrorist and is wanted for terrorist activities by the governments of the United States, Malaysia and the Philippines. Specifically, Defendant is alleged to have provided his brother with substantial sums of money that Defendant knew would be used to purchase firearms and ammunition and with two-way radios that Defendant knew would be used to make Improvised Explosive Devices ("IED's"). Defendant also is charged with making false statements to law enforcement officials concerning the nature of his activities. Collectively, the charges expose Defendant to a maximum prison sentence of 298 years.

Judge Lloyd held an initial detention hearing for Defendant on August 7, 2007. After hearing from the parties and reviewing information provided by the Office of Pretrial Services, Judge Lloyd found that Defendant was subject to detention as a flight risk. At the same time, Judge Lloyd declined to find that Defendant was subject to detention as a danger to other persons or to the community because there was no evidence that Defendant poses a danger to any person within the Northern District of California.

A second detention hearing was held before Judge Lloyd on August 14, 2007. At that time, Defendant and others offered to post sureties in excess of $600,000 to insure Defendant's appearance in court, and the Office of Pretrial Services submitted a supplemental report stating that it believed it could provide adequate monitoring of Defendant were Defendant released. Judge Lloyd set bond at $600,000 and adopted the conditions of release proposed by the Office of Pretrial Services. He again rejected the Government's argument that Defendant should be detained as a danger to others or to the community. The Government timely appealed.

2

1    The parties submitted written briefing, and this Court heard oral argument on the appeal

2  on September 12, 2007.

3                                          **DISCUSSION**

4    **A. Applicable Law**

5        Pursuant to 18 U.S.C. §3142(e), where there is probable cause to believe that a defendant

6  has committed an offense identified in 18 U.S.C. §2332(b)(5)(B) for which a maximum term of

7  imprisonment of ten years or more as prescribed, there is a rebuttable presumption that the

8  defendant is both a flight risk and a danger to the community.  An indictment is sufficient to

9  establish probable cause.  *United States v. Vargas*, 804 F.2d 157 (1st Cir. 1986). Where as here

10  the defendant proffers evidence to rebut the presumption, the Court is required to consider four

11  factors in deciding whether pretrial detention is appropriate: 1) the nature and circumstances of

12  the offense charged; 2) the weight of the evidence against the defendant; 3) the defendant's

13  character, physical and mental condition, family and community ties, past conduct, history

14  relating to drug and alcohol abuse, and criminal history; and 4) the nature and seriousness of the

15  danger to any person or to the community that would be posed by the defendant's release.  18

16  U.S.C. §3142(g); *United States v. Winsor*, 785 F.2d 755 (9th Cir. 1986; *United States v.

17  Motamedi*, 767 F.2d 1403, 1407 (9th Cir. 1985).  The presumption does not dissipate merely

18  because a defendant proffers evidence to rebut it; rather it continues to operate as a factor

19  militating against release, to be considered along with the other factors in the case.  *United States

20  v. Cook*, 880 F.2d 1158, 1160 (10th Cir 1989); *United States v. Perez-Franco*, 839 F.2d 867, 870

21  (1st Cir. 1986); *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986)

22        A finding that a defendant is a flight risk must be supported by a preponderance of the

23  evidence. *Motamedi*, 767 F.2d at 1406.  A finding that a defendant is a danger to others or to the

24  community must be supported by clear and convincing evidence.  18 U.S.C. §3142(f).  On appeal

25  from a detention order issued by a magistrate judge, the district court's review is *de novo*,

26  "without deference to the magistrate's factual findings." *United States v. Koenig*, 912 F.2d 1190,

27  1192 (9th Cir. 1990).

28

                                               3

**B. Evidence with Respect to the Statutory Factors**

    1. <u>Nature and Circumstances of the Offenses Charged</u>

The offenses with which Defendant is charged are extremely serious. Defendant's brother and co-defendant, Zulkifli Abd Hir, is a Specially Designated Global Terrorist who has been identified as a high-ranking operative in Jemaah-Islamiyah, which has been designated as a Foreign Terrorist Organization since 2002 and has been implicated in multiple acts of terrorism in the Philippines and elsewhere. The indictment alleges that with knowledge of the nature of his brother's activities and organizational affiliations, Defendant sent both money and material to his brother in furtherance of those activities, and then falsely denied any knowledge of wrongdoing. If convicted, Defendant faces a *de facto* life sentence. This factor weighs strongly in favor of detention.

    2. <u>Weight of the Evidence Against Defendant</u>

The Government has proffered considerable evidence of Defendant's involvement in the charged offenses. This evidence consists, *inter alia*, of the following:

a) Email correspondence between Defendant and his brother that tends to establish Defendant's knowledge both of the nature of his brother's activities and organizational affiliations and of the uses to which the money and material Defendant was sending to his brother would be put;

b) Defendant's admissions to the FBI that he knew his brother was a wanted terrorist, that he regularly exchanged emails with his brother about money and material his brother sought for his activities in the Philippines, and, at least arguably, that he knew that at least some of the two-way radios he sent to his brother were intended for use in IED's; and

c) A large cache of firearms and ammunition, including assault rifles, found in a shed at Defendant's residence and in a storage facility rented by Defendant, as well as manuals on guerilla warfare, sniper training, "unconventional warfare devices" and the tactics and techniques

1  of anti-terror warfare.[1]

2      While not disputing the genuineness of the email correspondence for purposes of the

3  present inquiry, Defendant contends that none of the emails proves that he himself has a

4  propensity for violence or dangerousness.  Citing to *Motamedi*, Defendant argues that:

5          Although the statute permits the court to consider the nature of the offense and the
        evidence of guilt, the statute neither requires nor permits a pretrial determination that
6          the person is guilty.  These factors may be considered only in terms of the likelihood
        that the person will fail to appear or will pose a danger to any person or to the
7          community.  Otherwise, if the court impermissibly makes a preliminary determination
        of guilt, the refusal to grant release could become in substance a matter of punishment.

8

9  *Motamedi*, 767 F.2d at 1408.  In a similar vein, Defendant contends that no part of his statement

10  to the FBI indicates that he poses a threat to another person or to the community, and that his

11  statement concerning the use of two-way radios to make IED's is much more equivocal than the

12  Government suggests.  Finally, Defendant argues that his possession of the firearms, ammunition

13  and military manuals is legal and thus should not be considered.

14      The Court finds that even giving Defendant the benefit of the doubt, as it must when

15  contemplating pretrial detention, *Motamedi*, 767 F.2d at 1405, this factor weighs strongly in

16  favor of detention.  The emails alone tend to show unambiguously that Defendant knowingly

17  provided material assistance to a designated terrorist and a designated terrorist organization.

18  Even giving lesser weight to Defendant's statement concerning the use of two-way radios to

19  make IED's, his other statements to the FBI corroborate the email evidence.  Finally, even

20  accepting Defendant's argument that his possession of the firearms, ammunition and military

21  manuals was not illegal, such possession cannot be viewed as if the emails and statement did not

22  exist; at the very least, it is contextual evidence of Defendant's state of mind. *United States v.*

23  *Goba*, 240 F.Supp.2d 242, 257-8 (W.D.N.Y. 2003).

24  _____

25      [1]Photographs proffered by the Government at oral argument also show Defendant
    wearing a face mask and sunglasses posing with several assault rifles while seated on a couch
26  with a small child. Defendant asserts that the photographs are nine years old and thus have no
    probative value as to his present propensity for violence.  The Government also proffered
27  evidence of jihadist literature found in Defendant's home.  For purposes of the instant discussion,
    the Court gives these materials little weight.
28

1          3. <u>Defendant's Character, Physical and Mental Condition, Family and</u>

2 <u>Community Ties, Past Conduct, History Relating to Drug or Alcohol Abuse, and Criminal</u>

3 <u>History</u>

4          Although Defendant was born in Malaysia and maintains significant family ties there, he

5 is a citizen of the United States and has resided and worked in the Northern District of California

6 for many years.  He holds undergraduate and graduate degrees from Arizona State University.

7 He is married and has four children, and his wife's extended family resides in Southern

8 California.  He has no known criminal history or history of substance abuse.  He has been

9 supported at his various court appearances by numerous friends and family members, several of

10 whom represented to Judge Lloyd that they were willing to act as sureties.  Defendant argues that

11 these facts in and of themselves are sufficient to rebut the presumption.

12          While acknowledging Defendant's showing, the Government points out that Defendant's

13 ties to Malaysia also are particularly strong: that among other things, Defendant's mother and

14 siblings all live overseas, principally in Malaysia, and Defendant holds a Malaysian passport, has

15 obtained Malaysian citizenship for two of his children and owns real property in Malaysia.  The

16 Government also argues that the very fact that Defendant has never served time in custody makes

17 him more likely to flee.

18          The Court finds that this factor weighs substantially against detention.  The fact that there

19 is strong evidence tending to show Defendant's guilt does not negate the fact that Defendant

20 historically has been a law-abiding citizen with significant ties to the local community.

21 However, while in a given case evidence with respect to this factor may be sufficient by itself to

22 rebut the presumption, *Dominguez*, 783 F.2d at 707, each case requires a fact-specific inquiry

23 that considers all of the factors enumerated in the statute. In at least one reported case that

24 involved charges similar to those at issue here, the defendants were detained notwithstanding

25 strikingly similar showings with respect to their background and community ties. *Goba*, 240

26 F.Supp.2d at 257-8.

27

28

6

1    4.  <u>The Nature and Seriousness of the Danger to Any Person or to the Community</u>

2    <u>That Would be Posed by the Defendant's Release</u>

3        The Government concedes that there is no evidence that Defendant has threatened or

4    poses a danger to any specific individual or has any history of violent conduct.  Defendant argues

5    that together these concessions are dispositive.  *United States v. King*, 849 F.2d. 485, 487 (11th

6    Cir. 1988); *Motamedi*, 767 F.2d at 1407.  Nonetheless, the Government contends that evidence

7    tending to show that Defendant has provided material support to a known terrorist establishes

8    that Defendant, if released, poses a danger to the community and to persons who might be

9    harmed by terrorist activities in the future.  The Government also asserts, contrary to Defendant's

10   argument, that it is immaterial where such community is located or where such persons reside.

11       Perhaps because much of the federal legislation directed at global terrorism is of

12   relatively recent origin, there is little case authority on point.  The two cases cited by the

13   Government in its brief, *United States v. Salerno*, 481 U.S. 739 ((1987), and *United States v.*

14   *O'Rourke*, 2006 U.S. Dist 1044 (D. Ariz.), are of limited relevance.  *Salerno* was a facial

15   challenge to §3142 that involved pretrial detention of alleged members of a Mafia crime family,

16   and while the court did not discuss whether assessment of a defendant's dangerousness requires

17   focus on a specific geographic location, the defendants in that case were career criminals who

18   had demonstrated a propensity for violence irrespective of their location.  *O'Rourke* involved an

19   alleged possessor of a large volume of child pornography who, because he was not required by

20   the pretrial order to register sex offender, was found to be dangerous because members of the

21   community would have no way of knowing his propensities.  Neither case involved a defendant

22   with no criminal history or known propensity for violence whose alleged dangerousness was to

23   persons in other parts of the world.  Similarly, *United States v. Tortora*, 922 F.2d 880 (1st Cir.

24   1990), cited by the Government at oral argument, involved an alleged Mafia "enforcer" with a

25   lengthy record of violence and threats of violence against persons in various locations, including

26   potential witnesses.

27       Perhaps the reported case most closely analogous to this one is *United States v. Goba*,

28   240 F.Supp.2d 242 (W.D.N.Y. 2003), cited in passing above.  Like this case, *Goba* involved the

7

pretrial detention of several individuals who were accused of knowingly providing material

support to a foreign terrorist organization. On the basis of a voluminous record, the court found

that the defendants both posed a flight risk and were dangerous to the community.  The court's

discussion of dangerousness is relevant here both because of the ways in which the facts of the

two cases are similar and because of the ways in which they are different.

        In *Goba*, the Government produced evidence that the defendants had traveled to and had

received training at a camp operated by al-Qaeda in Afghanistan. The court found that "each

defendant's attendance and training at the al-Farooq camp... in and of itself, renders each

defendant a danger to the community." *Id.*, at 253, commenting at one point that "the express

purpose of attending a terrorist training camp is to increase one's dangerousness." *Id.*, at 255. In

the course of describing the training that the defendants received, the court noted that a principal

goal of al-Qaeda and its leadership is to "perpetrate violence against Americans in the

furtherance of al-Qaeda's cause." *Id*.  In addition to the September 11 attacks, the court also cited

events that occurred outside the United States, such as the attacks on the USS Cole and the

embassy bombings in Kenya and Tanzania, as evidence of al-Qaeda's violent intentions. *Id*.  The

opinion does not refer to any evidence that the defendants posed a threat to anyone in the

Western District of New York.  In this respect, *Goba* supports the Government's position that the

dangerousness inquiry does not necessarily have a territorial limitation. Absent any authority to

the contrary, this Court finds *Goba* both instructive and persuasive.

        At the same time, the court in *Goba* declined the Government's invitation to "adopt a *per

se* rule linking attendance and training at a terrorist camp with dangerousness." *Id.*, at p. 254.  It

observed that "[o]ther cases may present factual circumstances that would not fit the

government's rule..." and that "the adoption of a *per se* rule, at least facially, connotes an

evisceration of the individual consideration that each defendant is entitled to under the Bail

Reform Act." *Id.*  Defendant is entitled to just such individual consideration here.

        Indeed, the allegations against Defendant are considerably less dramatic than those in

*Goba*.  There is no evidence in this case that Defendant himself has attended or participated in

terrorist training or engaged in terrorist activities.  As Defendant points out, the Government

8

1  apparently investigated his communications with his brother for at least two years before seeking

2  the present indictment, during which time it took no enforcement actions against him.  Based on

3  the evidence proffered by the Government, Defendant's dangerousness lies not in any propensity

4  to harm others by his own hand but in his demonstrated willingness to send money and material

5  support others who do so.  That said, the Court finds the evidence as to such willingness on

6  Defendant's part to be clear and convincing.  Given the extremely violent and destructive nature

7  of the terrorist activities to which Defendant is alleged to have given material support, the Court

8  concludes that this factor substantially supports pretrial detention unless it can be shown that

9  there are conditions or a combination of conditions of release that would address the specific

10  ways in which Defendant poses a danger and thus reasonably assure the safety of the community.

11     **C. Conclusions**

12        1. <u>Flight Risk</u>

13     The Court agrees with Magistrate Judge Lloyd's initial determination that Defendant

14  poses a flight risk, and it also agrees with Judge Lloyd that at least as to flight risk there is a

15  combination of conditions of release, as set forth in the supplemental report of the Office of

16  Pretrial Services dated August 13, 2007, that together with a sufficient bond reasonably would

17  assure Defendant's appearance in court.  However, based upon the foregoing discussion and its

18  independent review of the record, the Court finds the present amount of the bond to be

19  insufficient. Considering only the offenses with which he is charged, the strength of the evidence

20  against him, and the fact that he faces nearly 300 years in prison if convicted, Defendant has a

21  powerful incentive to flee.  Defendant's strong family ties to Malaysia and apparent access to

22  Malaysian travel documents heighten the Court's concern.  While the sureties available to date

23  are not insignificant, neither in this Court's opinion do they reflect the seriousness of the flight

24  risk at issue.  Accordingly, in the exercise of its discretion, the Court intends to increase the

25  amount of the bond should that become necessary.  However, as set forth below, the issue of

26  dangerousness must be resolved first .

27        2. <u>Dangerousness</u>

28     For the reasons discussed herein, the Court concludes as a matter of law that a finding of

1  dangerousness does not necessarily require a showing of danger to persons or to the community

2  within a limited geographic area.  Although the case law is sparse, the statute itself neither

3  defines "community" nor contains a geographic limitation as to where "any other person" must

4  reside or where the "community" must be located. In *Goba*, which dealt with closely-related

5  offenses, the court specifically referenced terrorist acts occurring not only outside the district but

6  outside the United States as evidence tending to show the defendants' future dangerousness.  The

7  court made no finding as to where any defendant was likely to engage in terrorist activities if

8  released.  It is inappropriate for this Court to restrict a statute in a manner not suggested by the

9  statutory language or required by case law.

10       However, this conclusion does not end the inquiry.  Like the court in *Goba,* this Court

11  must determine whether a condition or combination of conditions of release reasonably will

12  assure the safety of others and of the community.  It is at this point that the factual differences

13  between this case and *Goba* are most salient.  While the defendants in *Goba* had attended and

14  participated in training at an al-Qaeda training camp, a fact which standing alone led the court to

15  conclude that they were likely to engage in violent terrorist acts if released, Defendant in this

16  case is accused of sending money and two-way radios to his brother, knowing that his brother

17  was an active member of a terrorist organization.  While the court in *Goba* concluded that no

18  combination of conditions would be adequate and found specifically that electronic surveillance

19  would be insufficient, *Id.*, at p. 258, it is not clear that there is no combination of release

20  conditions that reasonably would assure that Defendant will not engage in the specific type of

21  conduct of which he stands accused.  The Government already has seized Defendant's firearms.

22  Conceivably, if it has not done so already, the Government also could freeze Defendant's bank

23  accounts, restrict Defendant's access to computers, and otherwise prevent Defendant from

24  communicating with his brother in the Philippines.

25       Perhaps because of the absence of a local nexus in the discussion of dangerousness before

26  Judge Lloyd, neither the Office of Pretrial Services nor the parties have addressed the question of

27  whether these or similar conditions might be appropriate, and the Court now requests that they do

28  so.  In this regard, the Court finds the concurring opinion of Chief Judge (now Justice) Breyer in

ORDER RE PRETRIAL DETENTION; REQUEST FOR SUPPLEMENTAL BRIEFING
Case No. CR-07-00501 JF

1  *Tortora* instructive.  *Tortora,* 922 F.2d at 894-5.  As the opinion suggests, any conditions

2  intended to assure the safety of the community must be both reasonably possible to implement

3  and reasonably likely to be effective in their implementation.

4          Counsel and the Office of Pretrial Services shall be prepared to discuss these issues with

5  the Court on Thursday, September 27, 2007 at 10:00am.  Written submissions not to exceed ten

6  (10) pages may be filed on or before Tuesday, September 25, 2007.  Good cause therefor

7  appearing, Defendant shall be detained pending the hearing and until further order of the Court.

8

9  IT IS SO ORDERED.

10

11  DATED: September 18, 2007

12                                         JEREMY FOGEL
                                           United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER RE PRETRIAL DETENTION; REQUEST FOR SUPPLEMENTAL BRIEFING
Case No. CR-07-00501 JF