**e-filed 10/2/07

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR-07-00501 JF |
| Plaintiff, | FINAL ORDER RE PRETRIAL DETENTION |
| v. | |
| RAHMAT ABD HIR, | |
| Defendant. | |

The procedural history, factual background and legal basis of the instant proceeding are set forth in this Court's order dated September 18, 2007 ("September 18 Order"), which order is incorporated herein by reference and made a part hereof. As explained in the September 18 Order, the Court found that Defendant poses a danger to the community within the meaning of 18 U.S.C. § 3142(e). However, because the record had not been fully developed, the Court also requested supplemental briefing as to whether "there are conditions or a combination of conditions of release that would address the specific ways in which Defendant poses a danger and thus reasonably assure the safety of the community." September 18 Order at p. 9. The Court has read and considered the supplemental briefing submitted by the parties and by the Office of Pretrial Services and also has considered the arguments of counsel and statements on behalf of

1  the Office of Pretrial Services at a hearing on September 27, 2007.  For the reasons set forth
2  below, the Court concludes that no set of conditions reasonably will assure the safety of the
3  community and will order that Defendant be detained pending trial.
4        The conditions of release proposed by Defendant and the Office of Pretrial Services may
5  be summarized as follows:
6        1) Defendant shall not possess any firearms or ammunition, and shall surrender to the
7  Government any such items that the Government has not already seized;
8        2) Defendant shall not communicate with his brother and co-defendant, Zulkifli Abd Hir,
9  or with anyone else in the Philippines, without the permission of the Office of Pretrial Services,
10 and shall provide the Office of Pretrial Services with a copy of his telephone bill upon request;
11       3) Defendant shall not communicate with anyone who has been identified by the
12 Government as a Specially-Designated Global Terrorist;
13       4) Defendant shall be monitored by means of global positioning satellite (GPS);
14       5) Defendant shall use the Internet only at work and only for work-related purposes;
15       6) Defendant shall report to the Office of Pretrial Services in person once a week;
16       7) To the extent that his accounts have not been frozen by the Government, Defendant
17 shall not send any money overseas without the permission of the Office of Pretrial Services;
18       8) Defendant shall not send any packages overseas without the permission of the Office
19 of Pretrial Services, and all mail sent by Defendant shall bear his true name and address; and
20       9) Defendant shall surrender to the Office of Pretrial Services any passports and travel
21 documents that the Government has not already seized.
22       A similar set of release conditions–the Internet and civilian GPS monitoring did not exist
23 at the time–was considered by the court in *United States v. Tortora*, 922 F.2d 880 (1st Cir. 1990),
24 a case referenced in the September 18 Order. In explaining why the conditions were insufficient,
25 the court observed that:
26     "[The conditions] are admittedly elaborate and extensive.  But they have an
       Achilles' heel:  if there is a unifying theme in this intricate set of restrictions, it
27     is that virtually all of them hinge on the defendant's good faith compliance."
28 *Id*., at 886.  Responding to Tortora's argument that the court could resolve its doubts about his

compliance by imposing additional restrictions, the court commented:

> "We think such a course impracticable here. Given the breadth of human imagination, it will always be possible to envision some set of release conditions which might reasonably assure the safety of the community. For instance, agents could be posted by the government to watch Tortora at all times to ensure that he remains compliant; the guards could search all visitors, dog Tortora's footsteps en route to all appointments, and otherwise act as private jailers. But the Bail Reform Act, as we read it, does not require release of a dangerous defendant if the only combination of conditions that would reasonably insure societal safety consists of heroic measures beyond those which can fairly be said to have been within Congress's contemplation."

*Id.*, at 887.

At the hearing on September 27, 2007, Mr. Jaime Carranza of the Office of Pretrial Services acknowledged that the effectiveness of the proposed conditions of release in this case necessarily would depend at least in part on Defendant's good-faith compliance. In particular, Mr. Carranza agreed, in response to questions from the Court, that it would be impossible for his office to insure that Defendant would not access the Internet from undisclosed computers or locations, would not communicate with his brother or other unauthorized persons by telephones other than his home telephone, would not transfer funds from sources presently unknown to the Government or would not use the mails in violation of the conditions of release. Thus, as was the case in *Tortora*, the Court must assess the likelihood of such compliance.

While the defendant in *Tortora* was a career criminal with a violent past and Defendant in this case has no prior criminal history, the Court cannot ignore the evidence in the record in drawing conclusions as to the adequacy of the proposed conditions. As discussed at length in the September 18 Order, the e-mails offer a clear and convincing indication of Defendant's willingness to provide material assistance to his brother with full knowledge that his brother had been identified as a Specially-Designated Global Terrorist who had engaged and intended to continue engaging in violent acts in the Philippines; it defies common sense to believe that Defendant did not know that such assistance was illegal and exposed him to severe criminal penalties. The e-mails and other evidence also tend to show that the principal means used by Defendant to provide such assistance were the Internet and the mails. Defendant's possession of manuals about guerilla warfare, sniper training, "unconventional warfare devices" and the tactics

and techniques of anti-terror warfare, as well as numerous firearms, including assault weapons, while not illegal per se, also are probative with respect to Defendant's state of mind. September 18 Order at p. 5, citing *United States v. Goba*, 240 F.Supp.2d 242, 257-8 (W.D.N.Y. 2003).

This Court finds, as did the Court of Appeals in *Tortora*, that the proposed conditions of release "can be too easily circumvented or manipulated" by a defendant whose promise to abide by the conditions must be viewed in light of his demonstrated willingness knowingly to provide material assistance to persons engaged in violent crimes. *See Tortora*, 922 F.2d. at 887; *see also Goba*, 240 F.Supp.2d at 258. Based on the clear and convincing evidence in the record, the Court also finds that there is an unacceptably high degree of risk that Defendant will fail to comply with the proposed conditions. Accordingly, this Court concludes that there are no conditions or combinations of conditions that reasonably will assure the safety of the community.

The nature of the offenses with which Defendant is charged makes a reasoned, objective analysis of the issues presented in this detention proceeding particularly important. There is a delicate balance between doing what is necessary to protect a democratic society from terrorism and protecting the individual rights that make that society democratic. A criminal defendant does not lose or suffer a diminution of his or her constitutional rights merely because he or she is accused of providing material assistance to terrorists; in every case, as there has been in this one, there must be an individualized, fact-specific inquiry. At the same time, in a case in which the evidence is compelling and the statutory factors justifying pretrial detention are met, courts must not hesitate to do what is necessary to protect the community.

Good cause therefor appearing, IT IS HEREBY ORDERED:

1) This order, together with the September 18 Order incorporated herein by reference, shall constitute the Court's written findings of fact and written statement of the reasons for Defendant's detention;

2) Defendant shall be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

3) Defendant shall be afforded reasonable opportunity for private consultation with

1  counsel; and

2      4) Upon order of a court of the United States or upon request of an attorney for the
3  Government, the person in charge of the corrections facility in which Defendant is confined shall
4  deliver Defendant to a United States Marshal for the purpose of an appearance in connection with
5  a court proceeding.

7  DATED: October 2, 2007

   _____
   JEREMY FOGEL
   United States District Judge

FINAL ORDER RE PRETRIAL DETENTION
Case No. CR-07-00501 JF